**CASE NO. 15-3690**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

DANIEL B. STORM, *et al.*,
Appellants

v.

PAYTIME, INC., et al.
Appellees

---

*Appeal from the Orders of the United States District Court for the Middle District of Pennsylvania in Civil Action Nos. 14-1138 and 14-3964 (Jones, J.)*

---

## REPLY BRIEF OF APPELLANTS

---

**CARLSON LYNCH SWEET & KILPELA LLP**
Gary F. Lynch
Edwin J. Kilpela
Jamisen A. Etzel
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246

Additional Attorneys
Listed on Inside Page

May 31, 2016                    *Attorneys for Appellants*

**LITE DEPALMA GREENBERG LLC**
Katrina Carroll
211 West Wacker Drive, Suite 500
Chicago, IL 60606
(p) (312) 750-1265

**LITE DEPALMA GREENBERG LLC**
Mindee J. Reuben
1521 Locust Street, 7th Floor
Philadelphia, PA 19102
(p) (267) 519 8306
(f) (215) 569-0958

**LOCKRIDGE GRINDAL NAUNEN PLLP**
Karen H. Riebel
Eric N. Linsk
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(p) (612) 339-6900

**MEREDITH & NARINE**
Joel C. Meredith
Krishna B. Narine
100 South Broad Street, Suite 905
Philadelphia, PA 19110
(p) (215) 564-5182
(f) (215) 569-0958

*Attorneys for Appellants*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.   *SPOKEO* AND *LEWERT* CONFIRM EMPLOYEES' STANDING ............ 2

III.  PAYTIME'S ARGUMENTS AGAINST STANDING ARE
      UNAVAILING ............................................................................... 4

      A.    The Fact That Employees Have Yet to Suffer Injury, and
            That Their Risk of Harm Is Contingent on Events Outside
            Their Control, Does Not Preclude Standing ......................................... 4

      B.    Employees' Allegations of Theft Distinguish This Case from
            *Reilly* ..................................................................................... 6

      C.    The Studies Cited in Employees' Complaints Support Standing ...... 10

IV.   PAYTIME'S ARGUMENTS CONCERNING JURISIDCTION
      LACK MERIT ............................................................................ 12

V.    CONCLUSION ............................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*American States Ins. Co v. Dastar Corp.*,
  318 F.3d 881 (9th Cir. 2003) .................................................................. 14

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
  729 F.3d 239 (3d Cir. 2013) ................................................................... 14

*Clapper v. Amnesty Intern. USA*,
  133 S. Ct. 1138 (2013) ........................................................... 3, 5, 6, 11

*Huey v. Teledyne, Inc.*,
  608 F.2d 1234 (9th Cir. 1979) ................................................................ 14

*Lewert v. P.F. Chang's China Bistro, Inc.*,
  No. 14-3700, 2016 WL 1459226 (7th Cir. Apr. 14, 2016) ......................... passim

*Monsanto Co. v. Geertson Seed Farms*,
  130 S.Ct. 2743 (2013) ............................................................................ 5

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ........................................................... 6, 7, 8, 9

*Remijas v. Neiman Marcus Group, LLC*,
  794 F.3d 688 (7th Cir. 2015) .................................................................. 8

*Spokeo, Inc. v. Robins*, No. 13-1339,
  136 S.Ct. 1540 (May 16, 2016) ....................................................... passim

## Statutes

28 U.S.C. § 1291 .................................................................................... 13

## Rules

Fed. R. App. P. 4(a)(1) ............................................................................ 13

## <u>Other Authorities</u>

Merriam-Webster's Online Dictionary, Definition of "Risk,"
   http://www.merriam-webster.com/dictionary/risk
   (last visited May 23, 2016) ................................................................. 5

## I.    INTRODUCTION

Since Appellants Storm, White, McMichael, Wilkinson, Holt and Redding (collectively, the "Employees") filed their opening brief, the Supreme Court has decided *Spokeo, Inc. v. Robins*, No. 13-1339, 136 S.Ct. 1540 (May 16, 2016), and the Seventh Circuit has decided *Lewert v. P.F. Chang's China Bistro, Inc.*, No. 14-3700, 2016 WL 1459226 (7th Cir. Apr. 14, 2016).  Both of these cases confirm that the theft of Employees' PFI as alleged in Employees' first consolidated amended class action complaint (the "CAC"), in Appellants Holt and Redding's class action complaint (the "*Holt* Complaint"), and in Appellants Storm, White, McMichael and Wilkinson's first amended class action complaint (the "*Storm* Amended Complaint") satisfies Article III's injury-in-fact requirement.

Disregarding *Lewert* and selectively citing *Spokeo*, Appellee Paytime, Inc. ("Paytime") argues that Employees have not suffered an injury-in-fact.  Although Paytime recognizes and concedes that Employees have adequately alleged theft of their data by a malicious third party, (*see* Brief for Appellees at 25 (hereinafter "App'l Br.") ("The only well pleaded allegations in [Employees' CAC]…are that their data was…stolen by a hacker")), Paytime claims that this is insufficient to confer Article III injury-in-fact.  The various arguments Paytime asserts in support of this proposition are incorrect and contradictory.

Paytime also claims that this Court lacks jurisdiction to hear this appeal because Employees should have realized that their CAC did not state a claim, and instead of filing a motion for leave to file the CAC, should have converted a non-appealable interlocutory order into a final and appealable order and appealed it immediately. As explained below, Paytime's opinion concerning what Employees should have known, and what they should have done, has no bearing on appellate jurisdiction.

In sum, Paytime's arguments should be rejected in full, and this Court should reverse the district court and remand the case for further proceedings.

## II.    *SPOKEO* AND *LEWERT* CONFIRM EMPLOYEES' STANDING

In *Spokeo*, the Supreme Court explained and analyzed Article III's "injury-in-fact" requirement. No. 13-1339, slip op. at 2. The court stated that an "injury-in-fact" must be particularized *and* concrete. *Id.* at 7-8 (emphasis added). To be "particularized," an injury-in-fact "must affect the plaintiff in a personal and individual way." *Id.* at 7. To be "concrete," an injury-in-fact "must be '*de facto*'; that is, it must actually exist"— it must be "'real,' and not 'abstract.'" *Id.* at 8. "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 8-9. Importantly, "*the risk of real harm* can[] satisfy the requirement of concreteness,"

2

*id.* at 10 (emphasis added), and the risk that real harm will occur need not be "literally certain." *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1150 n. 5 (2013).

In *Lewert*, the Seventh Circuit analyzed the application of Article III's "injury-in-fact" requirement in data breach cases. 2016 WL 1459226. In relevant part, *Lewert* explained:

> [Plaintiffs] describe the same kind of future injuries as the *Remijas* plaintiffs did: the increased risk of fraudulent charges and identity theft they face because their data has already been stolen. *These alleged injuries are concrete enough to support a lawsuit.* P.F. Chang's acknowledges that it experienced a data breach in June of 2014. It is plausible to infer a substantial risk of harm from the data breach, because a primary incentive for hackers is sooner or later to make fraudulent charges or assume those consumers' identities. Lewert is at risk for both fraudulent charges and identity theft. Kosner has already cancelled his debit card, but he is still at risk of identity theft. Other members of the would-be class will be in the same position as one or the other named plaintiff.

*Id.* at *3 (alterations, citations and quotation marks omitted) (emphasis added).

Applying *Spokeo* and *Lewert* to this case, it is clear that Employees have established an Article III injury-in-fact. First, Employees' injury is particularized—their PFI has been stolen and is in the hands of malicious hackers, personally affecting Employees. Second, Employees' injury is concrete—their data was stolen by hackers, making it "plausible to infer a substantial risk of harm from the data breach, because a primary incentive for hackers is sooner or later to make fraudulent charges or assume those consumers' identities." *Lewert*, 2016

3

WL 1459226, at *3.  "The risk of real harm," i.e., the risk that Employees will

suffer real harm through identity fraud and theft, is sufficient to demonstrate

injury-in-fact and satisfy Article III's standing requirements.  *Spokeo*, No. 13-

1339, slip op. at 10.  Accordingly, the district court should be reversed and this

case remanded for further proceedings.

## III.    PAYTIME'S ARGUMENTS AGAINST STANDING ARE UNAVAILING.

### A.    The Fact That Employees Have Yet to Suffer Injury, and That Their Risk of Harm Is Contingent on Events Outside Their Control, Does Not Preclude Standing

Throughout its response brief, Paytime argues that Employees have failed to

establish injury-in-fact because "whether or not the ultimate injury of identity

theft…will occur rest on a speculative chain of events depending entirely on the

actions of an unknown third party, the hacker."  (App'l Br. at 25); (*Id.* at 38

("[W]hether Plaintiffs will ever suffer injury of identity theft completely depends

on the intentions of hackers.")); (*Id.* at 43 ("Whether or not a data breach victim

will be injured depends entirely on…the decision of the hacker whether to attempt

to misuse the information, and his success in doing so.")).  This argument is

without merit.

The fact that Employees' harm is contingent, and based on a risk or

possibility of future injury, does not preclude standing.  As stated above, *Spokeo*

makes clear that "the *risk* of real harm" can satisfy Article III's injury-in-fact

4

requirement. No. 13-1339, slip op. at 10 (emphasis added). A "risk" is defined as

"the possibility that something…will happen." *See* Merriam-Webster's Online

Dictionary, Definition of "Risk," http://www.merriam-webster.com/dictionary/risk

(last visited May 23, 2016). As a "risk" involves the "possibility" of occurrence

rather than the "certainty" of occurrence, when a plaintiff relies on a risk of real

harm to establish injury-in-fact, he or she necessarily is relying on a possibility of

future harm to establish standing.

Moreover, the Supreme Court has stated that plaintiffs are ***not*** required to

"demonstrate that it is *literally certain* that the harms they identify will come

about." *Clapper*, 133 S.Ct. at 1150 n. 5 (emphasis added). Rather, "a 'substantial

risk' that the [identified] harm will occur" is sufficient to establish Article III

injury-in-fact. *Id.*[1] As the Supreme Court recognized, such risks, although not

---

[1] Appellee argues that the "'substantial risk' [standard] is not, and was not meant to be, an analogue to the requirement of certainly impending injury," (App'l Br. at 36), and that it is limited to "pre-enforcement challenges to government actions involving Constitutional rights," (App'l Br. at 37). First, whether the "substantial risk" standard is separate, or part of, the "certainly impending" standard, it remains that a "risk of real harm" qualifies as an injury-in-fact. *Spokeo*, No. 13-1339, slip op. at 10. Second, the "substantial risk" standard is not limited to the specific situation Appellee has identified. For example, in footnote five of *Clapper* the Supreme Court stated that, "In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 133 S.Ct. at 1150 n. 5. *Clapper* follows this proposition by citing *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2754-55 (2013), a case that does not involve "pre-enforcement challenges to government actions involving Constitution rights."

literally certain, reasonably serve as Article III injuries because they "may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Id.*

Here, Employees reasonably seek relief sufficient to mitigate or avoid any harm that may arise as a result of the theft of their PFI, and, with regard to Appellants Redding and Wilkinson, to recover costs they already have incurred to mitigate potential damage. The fact that the harm Employees seek to avoid, and Appellants Redding and Wilkinson have already expended money and time to avoid, is possible, rather than certain, does not, in itself, preclude standing. Rather, the substantial risk of real harm caused by the theft of Employees' PFI by a hacker serves as an Article III injury-in-fact and thus, confers standing to Employees, and makes the costs and time expended by Appellants Redding and Wilkinson reasonable. Accordingly, the Court should reject Paytime's arguments.

### B.    Employees' Allegations of Theft Distinguish This Case From *Reilly*

Paytime argues that the facts of *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) are indistinguishable from this case. (App'l Br. at 27-28). That contention is incorrect.

As stated in Employees' opening brief, the *Reilly* plaintiffs never alleged that hackers stole their personal information. (Employees' Brief at 29-30 (hereinafter "Emp's Br.")). In fact, Paytime notes that the *Reilly* plaintiffs only alleged that a hacker "*infiltrated* Ceridian's security system" and "*gain[ed] access*

to the confidential personal and financial information," (App'l Br. at 27) (quoting ¶ 11 of the *Reilly* complaint), and that they received a letter that stated the hackers were able to *gain access* to their personal information, *id.* (quoting ¶ 16 of the *Reilly* complaint).  Based on these allegations it was unclear whether the hackers were able to understand, read or copy what they had gained access to, or even if they intended to do so.  Instead, these allegations only allowed for an inference that a "firewall was penetrated."  *Reilly*, 664 F.3d at 44.  As this Court could only infer that a firewall was penetrated, and could not infer that data was actually taken from the defendant's computer systems, it did not consider the allegation contained in paragraph 19(d) of the *Reilly* plaintiffs' complaint, which stated that "criminals…now have Plaintiffs' and the Class' personal and financial information."  (App'l Br. at 27) (quoting ¶ 19(d) of the *Reilly* complaint).  The allegation that hackers possessed the plaintiffs' information was unsupported because the plaintiffs only alleged that their data may have been accessed, not that it was stolen.

Here, by contrast, Employees' have explicitly alleged that their personal data was stolen, (Emp's Br. at 18-19), and Paytime concedes that these allegations are well-pled, (App'l at 25).  Although Paytime urges that allegations of theft cannot support the inference that the thieves "read, copied or understood the named Plaintiffs' data or are prepared to use it," that contention strains common sense.

(App'l at 28). If hackers stole Employees' PFI, they were able to read, copy and understand it—without being able to read, copy and understand the information they could not have stolen it in the first place. Thus, allegations of theft support the inference that hackers read, copied and understood the information stolen; in fact, they require it. Furthermore, "a primary incentive for hackers is sooner or later to make fraudulent charges or assume [] consumers' identities." *Lewert*, 2016 WL 1459226, at *3 (quoting *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 693 (7th Cir. 2015)) (alterations and quotation marks omitted). As a result, allegations of theft support the contention that the thieves will seek to misuse that data, and that the victims of the theft suffer a substantial risk of real harm in the form of identity fraud and theft. Accordingly, when a plaintiff alleges theft, as Employees did here, and as the *Reilly* plaintiffs failed to do, they have suffered an Article III "injury-in-fact."

In addition to misreading *Reilly*'s facts, Paytime has over-read *Reilly's* holding. Although Paytime purports to recognize that *Reilly* requires actual misuse of data, or that such misuse is "certainly impending," many times throughout its brief, Paytime intimates that *Reilly* only grants standing where plaintiffs' allege misuse outright. (*See, e.g.*, App'l Br. at 25 (""[T]he controlling test for standing set forth in *Reilly* requires misuse of data…"); *id.* at 28 (citing JA0021) ("Plaintiffs have not alleged actual 'misuse' of the data, which is the touchstone of the *Reilly*

8

standard."). To the extent that Paytime is arguing that Employees must allege misuse to have standing they are incorrect.

*Reilly* clearly held that the plaintiffs in that case lacked standing because they failed to allege that their data "ha[d] been—or w[ould] ever be—misused." 664 F.3d at 43. In fact, this Court emphasized that "a number of courts have had occasion to decide whether the 'risk of future harm' posed by data security breaches confers standing on persons whose information *may* have been accessed," and "[m]ost courts have held that such plaintiffs lack standing because the harm is too speculative." *Id.* (emphasis in original).

Here, Employees have standing because their allegations of theft, as explained above, support the inference that their data "will be…misused." Employees have not merely asserted that their data "may have been accessed," but rather have affirmatively alleged that their data was stolen. Again, this makes all the difference and avoids any preclusive application of *Reilly* to Employees' claims. The full import and significance of this difference is discussed fully in Employees' opening brief. (Emp's Br. at 16-23 and 28-34). For these reasons, *Reilly* does not rule this case, and this Court should reject Paytime's argument that application of *Reilly* is proper.

### C.    The Studies Cited in Employees' Complaints Support Standing.

Employees cited numerous studies in their Complaints to demonstrate that the theft of their PFI results in a substantial risk of identify fraud and theft.  (Emp's Br. at 19-20).  These studies are germane because they demonstrate that a person whose information is stolen from a data breach has a substantially higher risk of identity theft and fraud than the average American.  *Id.*  Furthermore, these studies analyzed data breaches that involved the theft of Social Security numbers, which also were stolen in the Paytime data breach.  *Id.*

Paytime argues that these studies are irrelevant to Employees' standing because the "[CAC] does not allege any facts that would tend to show any sort of connection between the Paytime data breach and the breaches that were used to develop the statistics they cite."  (App'l at 29).  As an initial matter, whether the studies deal with data breaches that are sufficiently similar to the Paytime data breaches is a question to be determined through discovery, not self-serving and unsupported statements by Paytime.  *Cf. Lewert*, 2016 WL 1459226, at *3 ("If P.F. Chang's wishes to present evidence that this data breach is unlike prior breaches and that the plaintiffs should have known this, it is free to do so, but this goes to the merits."); *id.* at *4 ("P.F. Chang's will have the opportunity to present evidence to explain how the breach occurred and which stores it affected.").  Moreover, the studies cited, as stated above, outline the risks associated with theft of Social

Security numbers, the exact type of theft alleged here. Accordingly, it is premature for a court to decide that the studies are not pertinent, and in any event, the CAC alleges facts that show the studies have probative value for purposes of evaluating the risks faced by data breach victims.

Paytime also argues that the studies are irrelevant to Employees' standing because "there is no way to discern whether any of the named Plaintiffs would be among [those affected] individuals that Plaintiffs would have this Court believe, based upon the study, would experience identity theft." (App'l Br. at 30). This argument fails because it requires that harm be "literally certain" to confer standing.

It is clear that harm need not be "literally certain" to confer Article III injury-in-fact, *Clapper*, 133 S.Ct. at 1150 n.5, that a "risk of real harm" is sufficient for purposes of standing, *Spokeo*, No. 13-1339, slip op. at 10, and that a plaintiff has standing "based on a 'substantial risk' that harm will occur, which may prompt [him or her] to reasonably incur costs to mitigate or avoid that harm," *Clapper*, 133 S.Ct. at 1150 n. 5. Paytime's argument that standing is precluded because Employees failed to affirmatively identify when their harm will occur and to who, eviscerates the "substantial risk" standard and runs directly contrary to the Supreme Court's recognition that the "risk of real harm" can qualify as an Article

III injury-in-fact.  As the Supreme Court has stated that risks of harm appropriately grant standing, Paytime's argument must be disregarded.

## IV.    PAYTIME'S ARGUMENTS CONCERNING JURISDICTION LACK MERIT.

Paytime claims that Employees have "manufactured" appellate jurisdiction by choosing to stand on the CAC, rather than the original *Holt* Complaint or *Storm* Amended Complaint.  This argument is meritless for numerous reasons.

First, Employees were under no obligation to "timely" appeal the District Court's March 13 Order of dismissal without prejudice.  As noted in Employees' opening brief, the March 13 Order was interlocutory and non-appealable because it was a dismissal without prejudice and without judgment, and Employees did not elect to stand on the complaints dismissed by that Order.  (Emp's at 37-38).  There is no timeline in the Federal Rules of Appellate Procedure to timely appeal a non-appealable interlocutory order, nor could there be.  Instead, non-appealable interlocutory orders are properly appealed with the final judgment in a case.  (Emp's Br. at 39-40).  Accordingly, Employees timely appealed the March 13 Order when they appealed the October 6, 2015 Order and elected to stand on the CAC.

Second, Paytime's suggestion that "[Employees] could not have believed in good faith that their [Motion for Leave to File to Consolidated Amended Complaint] would be granted," simply is the opinion of a party seeking dismissal,

and, if countenanced, presents an unheard of standard for appellate jurisdiction.

(App'l Br. at 13).  Employees believed they could cure the deficiencies identified

by the district court by combining allegations contained in the *Holt* Complaint and

*Storm* Amended Complaint, and also by adding new allegations.  It would be one-

sided and unfair for this Court to not find appellate jurisdiction simply because

Paytime disagrees that the CAC states a claim and believes Employees should have

stood on their original complaints.  Furthermore, for this Court to deny appellate

jurisdiction on the basis that Employees should have known that the District Judge

would not allow them to file the CAC would craft a wholly new standard for

appellate jurisdiction, a standard that would strongly deter future plaintiffs from

attempting to amend a complaint that was dismissed without prejudice.  The

Federal Rules of Appellate Procedure and federal statutes do not grant or deny

appellate jurisdiction based on what an appellant should have known or done.

Rather, the Rules state, in clear and unmistakable language, that a party may take

an appeal as of right if she files a notice of appeal "with the district clerk within 30

days after entry of judgment or order appealed from," Fed. R. App. P. 4(a)(1), and

28 U.S.C. § 1291 gives federal courts jurisdiction of appeals from "all final

decisions of the district courts of the United States[.]"  Here, Employees filed their

notice of appeal 28 days after the District Court issued an order that became final

when Employees chose to stand on their proposed CAC, making their appeal

timely.  The fact that Paytime believes that Employees should not have attempted

to file their CAC, and should have stood on the *Holt* Complaint and *Storm*

Amended Complaint is irrelevant to the question of appellate jurisdiction.

Finally, the cases Paytime cites in support of its proposition that Employees

have manipulated the Federal Rules are inapposite.  *Camesi v. Univ. of Pittsburgh*

*Med. Ctr.*, 729 F.3d 239, 246 n. 1 (3d Cir. 2013) merely states that a party cannot

appeal after a failure to prosecute.  Here, Employees did not fail to prosecute their

action in an attempt to appeal.  Likewise, *American States Ins. Co v. Dastar Corp.*,

318 F.3d 881, 885 (9th Cir. 2003) analyzed manipulation in the context of

dismissing claims after the grant of partial summary judgment to create appellate

jurisdiction.  Again, Employees did not dismiss claims to create appellate

jurisdiction: the District Court dismissed their complaints in full and then denied

leave to amend.  Finally, *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1237 (9th Cir.

1979) fails to speak to this case because Employees did not "provoke the court into

ruling against them to create appellate jurisdiction."  (Def. Br. at 14).  Rather,

Employees filed a motion for leave to file the CAC because they believed it

adequately alleged standing.  Accordingly, Paytime has cited no authority that

supports its novel contention that this Court should analyze the intentions and

beliefs of counsel in this circumstance before finding appellate jurisdiction.

## V.    CONCLUSION

For the forgoing reasons the Court should reject Paytime's arguments,

reverse the district court, and remand this case for further proceedings.


Dated: May 31, 2016                         Respectfully submitted,

                                    By:    /s/ Gary F. Lynch
                                           **CARLSON LYNCH SWEET &
                                           KILPELA LLP**
                                           Gary F. Lynch
                                           Edwin J. Kilpela
                                           Jamisen A. Etzel
                                           1133 Penn Avenue, 5th Floor
                                           Pittsburgh, PA 15222
                                           (p) (412) 322-9243
                                           (f) (412) 231-0246

                                           **LITE DEPALMA GREENBERG
                                           LLC**
                                           Katrina Carroll
                                           211 West Wacker Drive, Suite 500
                                           Chicago, IL 60606
                                           (p) (312) 750-1265

                                           **LITE DEPALMA GREENBERG
                                           LLC**
                                           Mindee J. Reuben
                                           1521 Locust Street, 7th Floor
                                           Philadelphia, PA 19102
                                           (p) (267) 519 8306
                                           (f) (215) 569-0958

                                           **LOCKRIDGE GRINDAL
                                           NAUNEN PLLP**
                                           Karen H. Riebel
                                           Eric N. Linsk

100 Washington Avenue South,
Suite 2200
Minneapolis, MN 55401
(p) (612) 339-6900

**MEREDITH & NARINE**
Joel C. Meredith
Krishna B. Narine
100 South Broad Street, Suite 905
Philadelphia, PA 19110
(p) (215) 564-5182
(f) (215) 569-0958

*Attorneys for Appellants*

## COMBINED CERTIFICATIONS

I, Gary F. Lynch, signing counsel for Appellants, hereby certify as follows:

1.     Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.     Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), I certify that this Reply Brief of Appellants complies with the type and volume limitations of Fed. R. App. P. 32(a)(7)(B):

      a.  According to the word count in the word processing system employed in drafting this brief (Microsoft Word 2013), this Reply Brief of Appellants contains 3,430 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

      b.  This Brief has been written in Times New Roman, a proportionally-spaced, 14-point serif font.

3.     On today's date, May 31, 2016, I filed this brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

4.    I further certify that the E-Brief was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

5.    I also certify that the text of the hard copies and the E-Brief are identical.

*/s/ Gary F. Lynch*
Gary F. Lynch (PA#56887)
**CARLSON LYNCH SWEET & KILPELA LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246
glynch@carlsonlynch.com

*Attorney for Appellants*